José Sosa Fernández, demandante y apelante, *v.* José Sosa Oliva, demandado y apelado.

No. 3885.—*Visto:* Junio 17, 1926. *Resuelto:* Julio 31, 1926.

1. CONTRATOS—REQUISITOS Y VALIDEZ—CONSIDERACIÓN O CAUSA—CONTRATO SIN CAUSA O FALTO DE CAUSA.—Si bien un padre, aunque cumpla al límite el deber de educar a su hijo no puede exigir de éste que cargue con los gastos de su educación incurridos en su minoridad, sin embargo, si el hijo, en su mayoridad, reconociendo el esfuerzo del padre y debiendo recibir de éste dinero de la herencia materna, oyendo su conciencia o actuando por mera liberalidad, voluntariamente se aviene a cargar con parte de aquellos gastos y así lo reconoce y otorga en un contrato, no puede sostenerse que tal contrato sea inexistente por falta de causa.

2. Limitación de Acciones—Estatutos de Limitación—Limitaciones Aplicables a Determinadas Acciones—Nulidad de Contratos.—Cuando el contrato es meramente anulable, no inexistente, como sucedería en este caso, si la causa de nulidad alegada en la demanda se hubiera probado en el juicio, la acción para pedir la nulidad, sólo dura cuatro años.

Sentencia de *Charles E. Foote,* J. (San Juan, Primer Distrito), declarando sin lugar la demanda con costas. *Confirmada.*

*Juan B. Soto,* abogado del apelante; *Jaime Sifre* y *Horacio Franceschi,* abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El 28 de marzo de 1917 comparecieron ante Notario Público José Sosa Oliva y José Sosa Fernández y otorgaron un contrato en el cual entre otros particulares se acordó lo que sigue:

"Séptimo: Que deseando ambos comparecientes liquidar la cuenta de la herencia materna que al segundo compareciente corresponde lo hacen por medio de las siguientes cláusulas.—Primera: Don José Sosa Fernández reconoce y acepta la cuenta que por gastos de su educación presenta su señor padre, José Sosa Oliva y afirma que le consta de propio conocimiento la exactitud de cada una de sus partidas.—Segunda: Ambos comparecientes convienen en que la cantidad total de tres mil trescientos veinte y nueve dólares y cincuenta centavos a que asciende la herencia materna del segundo compareciente se halla incluída en la cantidad a que asciende la cuenta mencionada en el apartado sexto de la exposición de esta escritura. Por lo tanto, don José Sosa Fernández da por recibida ya la cantidad a que asciende su herencia materna y otorga a su señor padre, don José Sosa Oliva la más eficaz carta de pago, relevándolo de toda responsabilidad, y quedando agradecido a su celo y diligencias paternales.—Tercera: Don José Sosa Oliva hace constar que la diferencia entre la cantidad total de la cuenta mencionada y la herencia materna, o sea la suma de ocho mil doscientos cincuenta y tres dólares veinte y un centavos representan una donación graciosa a su hijo, don José Sosa Fernández, cumpliendo el deber paternal de darle la mejor educación posible con arreglo a los bienes de fortuna del donante."

El 18 de febrero de 1924 José Sosa Fernández, el hijo, demandó a José Sosa Oliva, el padre, pidiendo a la corte

que dictara sentencia declarando nulo lo acordado y orde-
nando que se procediera a la división de la herencia ma-
terna y a la entrega al demandante de la porción que le co-
rrespondía, porque el consentimiento del demandante se ob-
tuvo por error y fraude.

Alegó el demandado la prescripción de la acción ejerci-
tada y negó el error y el fraude. Fué el pleito a juicio y
la corte finalmente dictó sentencia declarando la demanda
sin lugar porque la acción de nulidad ejercitada sólo dura
cuatro años y había por tanto prescrito al radicarse la de-
manda. No conforme el demandante interpuso el presente
recurso de apelación.

Se admite en cierto modo por el apelante que si se tra-
tara de una acción ordinaria de nulidad la sentencia esta-
ría bien dictada, pero se sostiene por él que aquí el con-
trato no es meramente anulable sino inexistente, en cuyo
caso no rige la regla de los cuatro años.

La parte apelada alega que se trata ahora por el ape-
lante de variar la teoría de la demanda. Quizá tenga razón
porque examinando la demanda en sí misma se observa que
se basa no en la falta de causa sino en el error y el fraude.
Pero como también pueden encontrarse en los autos elemen-
tos para sostener que la inexistencia fué considerada desde
un principio, preferimos no ahondar más en esta cuestión
y discutir el caso en el terreno en que lo plantea el ape-
lante, porque aún así la sentencia se sostiene.

Copiamos de su alegato:

"La Corte se equivocó al no declarar la inexistencia del contrato
que se intentó consignar en la escritura transcrita en la demanda,
pues dicho contrato carece de causa real, y, consiguientemente, no
puede estimarse como existiendo, de acuerdo con lo que dispone el
art. 1228 del Código Civil de Puerto Rico. Dice éste:

" 'No hay contrato sino cuando concurren los requisitos siguien-
tes:

" '1º.—Consentimiento de los contratantes.

" '2º.—Objeto cierto que sea materia del contrato.

" '3º.—Causa de la obligación que se establezca.' ·

"¿Cuál es la causa que indica el contrato de referencia para el cedente, o sea el apelante? Los gastos, que según dicha escritura, el demandado realizó con motivo de la educación del demandante. ¿Constituyen esos gastos una causa real? Si la constituyen, el contrato existió, aunque por algún otro motivo pudiera ser nulo; pero si no la constituyen, no existió tal contrato, ya que carecía de uno de los elementos que, según el transcrito artículo de nuestro Código Civil, es indispensable para su existencia.

"Nosotros entendemos que no la constituyen. Que la causa o consideración en virtud de la cual el demandante cedió al demandado sus derechos y acciones, sobre la herencia de su finada madre, no es real, y por tanto, no puede estimarse su existencia. A esta conclusión nos llevan las siguientes consideraciones:

"(a) Según aparece de la prueba, los gastos de educación empezaron cuando el demandante tenía la edad de 9 años, y continuaron hasta que el demandante tuvo la edad de 18 años; en otras palabras, tales gastos tuvieron lugar durante la menor edad del demandante.

"(b) Según resulta de la misma prueba, los referidos gastos no fueron para atender a estudios profesionales, siendo los realizados por el demandante meramente aquellos que constituyen la instrucción primaria, y próximamente el cuarto año de High School.

"(c) Los gastos de esa instrucción, de acuerdo con los arts. 212 y 213 del Código Civil, están comprendidos en los alimentos, que de acuerdo con dichos artículos, el padre viene obligado a dar al hijo mientras éste no haya cumplido la mayor edad. El art. 212 dice así:

"'Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.

"'Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad.'

"(d) Si el padre estaba obligado a dar alimentos, tales alimentos no constituyen causa en un contrato en que el hijo renuncia a favor de su padre, en consideración a tales alimentos, los derechos hereditarios que le correspondían en el caudal dejado a su fallecimiento por el cónyuge premuerto.

"El padre no demostró en ningún momento del juicio que los gastos de instrucción y educación de su hijo, tuvieran lugar después de haber cumplido éste la edad de 21 años. Por el contrario, de la prueba resulta que cuando tales gastos empezaron a originarse, el demandante era un niño de temprana edad. (Véase la declara-

ción del demandante).   Y siendo estos los hechos, sólo nos resta considerar la ley en cuanto al punto siguiente:

"¿Puede estimarse como causa de un contrato la realización de un acto a cuya comisión se viene obligado por ministerio de la ley?"

Estamos enteramente conformes con la ilustrada representación del apelante en que el padre demandado no tenía derecho alguno a exigir del hijo demandante que cargara con parte de los gastos de su educación.   El padre estaba obligado a alimentar a su hijo, de acuerdo con la ley.   Él pudo dejarlo en Puerto Rico sin educación como tantos otros padres hacen faltando con ello al cumplimiento de su deber en toda su plenitud dados sus medios de fortuna que al parecer si no amplios eran bastantes; pero el padre en este caso optó por cumplir su deber hasta el límite.   Actuó voluntariamente y nada podía reclamar.   La única recompensa a que podía aspirar era a la satisfacción del deber cumplido plenamente.   Mas si el hijo, en la mayoría de su edad, reconociendo el esfuerzo del padre y debiendo percibir de él algún dinero procedente de la herencia de su madre, obedeciendo la voz de su propia conciencia, o actuando por mera liberalidad, se aviene voluntariamente a cargar con parte de los gastos que su educación ocasionara y así lo reconoce y otorga en un contrato ¿puede sostenerse que tal contrato sea inexistente? ¿que carezca de causa?   En manera alguna a nuestro juicio.   Si tan estrecha teoría se sustentara, una gran parte de los contratos en que actúa libremente la conciencia, en que se asumen las más nobles obligaciones, podría anularse después si el estado de ánimo, si la hombría de bien, si la rectitud de espíritu variara.

Parece conveniente que transcribamos los siguientes conceptos de Scaevola comentando el artículo 1274 del Código Civil español igual al 1241 de nuestro Código Civil revisado.   Dicen:

"Para llegar a obtener el verdadero concepto jurídico de la causa, debemos ante todo observar que en la embriogenia del con-

trato se combinan tres elementos: materia u objeto, mente, de la que toma su razón la causa, y voluntad, en la que germina el consentimiento. Hay, pues, elementos personales y reales; los primeros, referidos siempre al sujeto en su *finalidad mental* próxima o remota, en su *determinación volitiva,* en cuanto en ella reside el consentimiento, y potencialmente todo el contrato por ejecutar, y *en su actividad u omisión conscientes,* obligaciones de dar, hacer o no hacer condicionadas por la exigibilidad a virtud del *consensus* y, en último término, mediante la coacción del poder social. Los segundos, o sean los elementos reales perfectamente identificados con todo lo que constituye el patrimonio individual, cosas o servicios.

"¿En cuál de estos dos elementos contractuales está comprendida la causa? En nuestro sentir, en los elementos personales. El artículo 1274 del Código Civil, que no es ciertamente texto sospechoso, porque su ortodoxia descansa en el clasicismo del derecho francés, pone la causa del contrato en la prestación, en la promesa, en el beneficio o en la mera liberalidad. Toda prestación denota actividad personal: la promesa es acto de voluntad, esencial en los contratos preparatorios: el beneficio, aparte el esfuerzo personal que arguye, es un goce o una satisfacción cuya medida hay que buscarla en la conciencia del que lo recibe, y, por tanto, corresponde a la esfera subjetiva o personal; y por último, la mera liberalidad, como acto espontáneo y gracioso, también corresponde al reino de la libertad y de la intención, igualmente personal y psíquico.

"El texto mismo del artículo 1274 del Código nos enseña que la causa es un elemento personal de la contractualidad. Ahora bien; si de los tres agentes subjetivos hay forzosamente que restar uno, el de la determinación volitiva, porque de lleno entra en la libertad de consentir, y el elemento *actividad* lo vemos requerido por el objeto de la *obligatio,* que, como sabemos, se traduce en acto, en prestación propiamente dicha, nos resta únicamente para núcleo de la causa el elemento o componente de *finalidad.* Y he aquí dónde se descubre con toda certidumbre la causa contractual, no obstante la oposición de los que, por no distinguir entre la metafísica y la plástica del derecho, han introducido la confusión en esta teoría, de suyo tan llana y comprensible.

"No es lo mismo el nervio que la corriente nerviosa, ni el flúido eléctrico es sustancialmente luz, calórico, fuerza, sino flúido. Del propio modo la finalidad en el contrato no es la prestación, aunque ésta potencialmente se encuentre en aquélla. Testimonio irrecusable de que la causa contractual reside en la intención próxima de los estipulantes, nos lo brindan los contratos de pura beneficencia.

"Mas como la intención próxima de los contratantes debe ser congruente y armónica con la finalidad positiva del contrato en su concepto de creación o institución jurídica y social, y de ningún modo una subversión de su sustancia; de aquí que, no con relación a la metafísica, sino en los dominios de la plástica del derecho, en sus formas vivientes y exigibles, surgiera la idea de correlación entre la finalidad y la prestación, y aquélla se subordinara a ésta por ser la primera *idea* y la segunda *hecho,* y ser siempre el elemento intencional en el derecho en acción un inducido de los hechos demostrados.

"Se interpuso el problema de la prueba de la causa cuando se tratara de sustraerse al contrato por la alegación de no causa, o causa ilícita, y entonces fué cuando viéndose con claridad meridiana que las intenciones se prueban por los hechos, se pensó y se llevó  acabo en el derecho constituído la traslación de la causa, de la mente a las prestaciones en aquellos contratos, en los que por el juego de fines encontrados (contratos bilaterales) la intersección de estos fines en el consentimiento argüía la presencia de las causas de ambos estipulantes.

"Por esto dice muy juiciosamente Serafini que si en el Derecho romano, aún en los contratos no formales, el acreedor debía probar tanto la voluntad como la existencia de la causa, en el derecho moderno, *probada por el acreedor la voluntad, se presume la causa,* y corresponde al deudor probar en cada caso la inexistencia de aquélla.

"Confirmación de este aserto es el artículo 1277 del Código Civil, complemento necesario del 1274. Según dicho artículo, aunque la causa no se exprese en el contrato, *se presume que existe,* y que es lícita *mientras el deudor no pruebe lo contrario."* Scaevola. Comentarios al Código Civil, Tomo 20, págs. 750–53.

Véase también 13 C. J. 342.

En su declaración en el juicio el propio demandante manifestó que cuando regresó de los Estados Unidos encontró a su padre viviendo de tal modo que lo creyó en la miseria y se condolió y se avino a otorgar el contrato. Luego dice que su padre estaba en buena posición.

Supongamos que la miseria hubiera sido cierta. Si un hijo para con su padre o un acreedor cualquiera para con su deudor se aviene a condonar la deuda habiendo en consideración el mal estado pecuniario y cierta conducta ante-

rior del padre o del deudor para con el acreedor, conducta que aunque era la que debió seguirse se reconoce que fué noble y buena y que con ella se cumplió el deber hasta el límite ¿podría sostenerse que no existía causa dentro de un sistema jurídico como el nuestro que reconoce la mera liberalidad del bienhechor como causa en los contratos de beneficencia y que prescribe que aunque la causa no se exprese en los contratos se presume que existe y que es lícita mientras el deudor no pruebe lo contrario? Una respuesta negativa se impone.

Y si la miseria era fingida, tendríamos entonces el **vicio** de nulidad, pero no la inexistencia del contrato, y por tanto la aplicabilidad de la ley de prescripción. Igual razonamiento cabe en cuanto a las otras *causas de nulidad* que en la demanda se alegan.

*Bajo cualquier aspecto que el caso se estudie procede, pues, la confirmación de la sentencia recurrida.*

El Juez Asociado Señor Hutchison no intervino en la resolución de este caso.